Steven JOHNSON, Plaintiff,

v.

Officer Erik CAMPBELL, in his official and personal capacity, and Township of Dewey Beach, a political subdivision of Sussex County, Delaware, Defendants.

No. Civ.A. 00–510–JJF.

United States District Court, D. Delaware.

July 31, 2002.

Victor F. Battaglia, Philip B. Bartoshesky, Biggs & Battaglia, Wilmington, Delaware, for plaintiff.

Norman H. Brooks, Brian L. Kasprzak, Marks, O'Neil, O'Brien, & Courtney, P.C., Wilmington, Delaware, for defendants.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Plaintiff's Motion For Judgment As A Matter Of Law Or In The Alternative A New Trial (D.I.114) and Defendants' Motion For Attorney's Fees (D.I.116). For the reasons discussed, the Court will deny Plaintiff's Motion For Judgment As A Matter Of Law Or In The Alternative A New Trial, and deny Defendants' Motion For Attorney's Fees.

### BACKGROUND

By his Complaint, Plaintiff Steven Johnson, then head coach of the William Penn Boy's Varsity Basketball program, alleged that Defendant Officer Erik Campbell ("Defendant Campbell") unlawfully arrested, took into custody, and/or detained Plaintiff in violation of 42 U.S.C. § 1983. (D.I. 1 at 7). Plaintiff also alleged that Defendant Township of Dewey Beach ("Defendant Dewey Beach") should have known of the alleged unconstitutional actions of Defendant Campbell, because he was an employee acting on and behalf of and under the supervision and control of Defendant Dewey Beach. (D.I. 1 at 7). The Complaint further alleged that Defendant Dewey Beach failed to adequately train and/or supervise Defendant Campbell in violation of 42 U.S.C. § 1983. (D.I. 1 at 8).

The Court held a three day jury trial on Plaintiff's claims. After its deliberations, the jury returned a verdict against Plaintiff and in favor of Defendants Campbell

and Dewey Beach on all of Plaintiff's claims. (D.I.112).

Thereafter, Plaintiff filed the instant Motion seeking judgment as a matter of law on the grounds that (1) the evidence was insufficient to support the jury's finding that Plaintiff's detention by Defendant Campbell did not violate his constitutional rights; (2) the evidence was insufficient to support the jury's finding that Plaintiff's arrest was not in violation of his constitutional rights; and (3) the evidence was insufficient to support the jury's finding that Dewey Beach adequately trained its police officers. In the alternative, Plaintiff requests a new trial on the grounds that (1) the jury's verdict is against the great weight of the evidence; (2) the jury instruction regarding Section 1983 was inadequate; (3) the jury instruction on Plaintiff's claim of illegal detention was incomplete and erroneous; and (2) the jury instruction on 11 Del.C. § 1301 (disorderly conduct statute) was incomplete and erroneous. In addition, Defendants Campbell and Dewey Beach have filed a Motion For Attorney's Fees requesting the Court to award Defendants attorney's fees pursuant to 42 U.S.C. § 1988, as the "prevailing party" in this litigation. Both motions have been fully briefed and are ripe for the Court's review.

## STANDARD OF REVIEW

### I. Motion For Judgment As A Matter Of Law

■ To prevail on a motion for judgment as a matter of law after a jury trial, the moving party "must show that there is 'no legally sufficient evidentiary basis' for a reasonable jury to find for defendants." *American Life Ins. Co. v. Parra*, 63 F.Supp.2d 480, 497 (D.Del.1999). In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir.), *reh'g en banc denied*, 1991 U.S.App. LEXIS 16758 (3d Cir.1991). The Court may not judge the credibility of witnesses and may not substitute its assessment of the evidence for that of the jury. *Parra*, 63 F.Supp.2d at 497. In sum, the court must determine "whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief." *Id.* (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir.1993)); *see also* 9A Wright & Miller, *Federal Practice & Procedure* § 2524 at 249–266 (3d ed. 1995) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury properly could find a verdict for that party.")

### II. Motion for a New Trial

Rule 59(a) of the Federal Rules of Civil Procedure provides, in relevant part, that:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the court of the United States . . .

Fed.R.Civ.P. 59(a)(1). The decision to grant or deny a new trial is committed to the sound discretion of the district court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Although Rule 59(a) does not specify the grounds upon which a court may grant a new trial, it is clear that a district court may, in its discretion, grant a new trial because of improper or inadequate jury instructions. *Lafate v. Chase*

*Manhattan Bank (USA),* 123 F.Supp.2d 773, 785 (D.Del.2000), *quoting Finch v. Hercules,* 941 F.Supp. 1395, 1413 (D.Del. 1996).

## III. Motion For Attorney's Fees

In pertinent part, 42 U.S.C. § 1988 provides:

> In any action or proceeding to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs.

42 U.S.C. § 1988(b).

To recover attorney's fees, the party must be a prevailing party, and the fees sought must be reasonable. In addition, to prevent a chilling effect on lawsuits filed by plaintiffs, courts have limited a defendant's recovery of attorney's fees to actions which are frivolous, unreasonable, or without foundation, or which the plaintiff has continued to litigate after it has become clear that the action is frivolous or groundless. *Izquierdo v. Sills,* 1999 WL 1427351, *1–2, 1999 U.S.Dist. LEXIS 20820, * 4–6 (D.Del.1999) (citing *Christiansburg Garment v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

## DISCUSSION

### I. Plaintiff's Motion For Judgment As A Matter Of Law

A. *Whether There Was Sufficient Evidence To Support The Jury's Verdict That Plaintiff's Constitutional Rights Were Not Violated By His Detention*

By his Motion, Plaintiff contends that the evidence was insufficient to support the jury's verdict that Plaintiff's detention was not a violation of his constitutional rights. Specifically, Plaintiff contends that the actions of Defendant Campbell contravened the teachings of *Terry v. Ohio,* 392 U.S. at 21, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because "Defendant Campbell could not articulate, specify or explain any basis for his detention of Plaintiff other than that he fit the description of the person Sgt. Berry told him Christine Price had said made her nervous." (D.I. 115 at 10).

After reviewing the evidence in the light most favorable to Defendants, as the verdict winners, the Court concludes that sufficient evidence supports the jury's conclusion that the detention of Plaintiff did not violate his constitutional rights. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (quoting *Terry,* 392 U.S. at 22, 88 S.Ct. 1868). Whether an officer's conduct is appropriate is judged according to a reasonableness standard. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily may be most reasonable in light of the facts known to the officer at the time." *Adams,* 407 U.S. at 146, 92 S.Ct. 1921. In assessing whether a brief stop is reasonable, the court must weigh the circumstances against an objective standard. *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868. The subjective good faith belief of an officer is insufficient. *Id.* Rather, for a *Terry* stop to be considered valid from its inception, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Id.* at 21, 88 S.Ct. 1868. Stated another way, the court must ask whether the facts available to the officer at the moment of the stop " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate."

*Id.* at 22, 88 S.Ct. 1868. Although the totality of the circumstances is considered in determining whether an officer acted reasonably in stopping an individual, specific factors of importance include the time of day or night, the location of the suspect parties, the parties' behavior when they become aware of the officer's presence, and the experience of the officer. *See e.g. United States v. Dawdy,* 46 F.3d 1427, 1429 (8th Cir.1995); *United States v. Grey,* 2001 WL 965077, *6 (D.Del. Aug.23, 2001) (Sleet, J.) (recognizing that police officer's "personal observations and 'commonsense judgments and inferences about human behavior' " can provide a basis for reasonable suspicion justifying a *Terry* stop) (citations omitted).

 In this case, the evidence at trial established that Defendant Campbell made the investigatory stop of Plaintiff on December 29, 1999, after 8 p.m in the evening. The evening was both dark and cold. Defendant Campbell testified that at the time he stopped Plaintiff and requested identification, he was aware of a robbery a few months earlier in which an apparently innocent man spent a few minutes in the motel office as a pretext for the robbery. (D.I. 126 at B–69, B–110–111). Defendant Campbell also testified that he relied upon the information provided by Mrs. Price, a former Delaware State Police officer of 14 years, and her husband, as related to him by the investigating officer, Sergeant Berry. (D.I. 126 at B–67–69). This information included the description of the suspect whom Mrs. Price had observed pacing in a nervous and agitated manner in the motel office. Defendant Campbell canvassed the area outside the motel and observed several African American individuals, but he did not question these men, because they did not meet the description provided by Mrs. Price. (D.I. 126 at B–70). Defendant Campbell then observed the individual meeting the description sitting in the driver's seat of a van reading a newspaper. Upon observing the individual, Defendant Campbell approached the van and gestured to Plaintiff to roll down the window. (D.I. 126 at B–73–76). Plaintiff just looked at Defendant Campbell and made a gesture, and Defendant Campbell then verbally asked him to roll down the window. Plaintiff then rolled the window down just a few inches, but not all the way. Defendant Campbell then asked Plaintiff for identification. Plaintiff did not comply but responded by asking Defendant Campbell several questions including why he wanted identification and what he wanted. Although Defendant Campbell did not respond initially, once he told Plaintiff he was investigating a suspicious person complaint, Plaintiff still did not comply with Defendant Campbell's request and began saying things like "I am not suspicious, I am not doing anything suspicious." (D.I. 126 at B–76). Defendant Campbell reiterated his request for identification and explained that he was investigating a suspicious person complaint, that he just wanted to find out who Plaintiff was and whether he belonged there, and that he would then leave him alone. (D.I. 126 at B–76). Given the circumstances of the evening and the facts known to Defendant Campbell at the time of the stop, the Court cannot conclude that his actions were unreasonable. Thus, in these circumstances, the Court concludes that sufficient evidence supports the jury's conclusion that Plaintiff's detention did not rise to the level of a constitutional violation.

Relying on the Delaware Supreme Court's decision in *Jones v. State,* 745 A.2d 856 (Del.1999), Plaintiff contends that Defendant Campbell's initial stop of Plaintiff was illegal as a matter of law. As a threshold matter, the *Jones* decision is not controlling in this case, because it was decided pursuant to state law rather than federal constitutional law. *Id.* at 863, 871–872 (concluding that officer did not possess

reasonable and articulable suspicion for the stop under court's interpretation of 11 Del.C. § 1902 and Article I, § 6 of the Delaware Constitution). In *Jones,* the Delaware Supreme Court recognized that the protections provided to citizens under the Delaware Constitution exceed the protections provided to citizens under the Fourth Amendment of the United States Constitution. *Id.* at 863–869. However, to prevail on his claim that his detention was illegal under 42 U.S.C. § 1983, Plaintiff must establish a violation of his federal constitutional rights.

Further, even if the *Jones* case is considered, the Court finds the circumstances in *Jones* to be distinguishable from the circumstances in this case. In *Jones,* the officer did not first approach Jones and request identification as required by 11 Del.C. § 1902. Rather, the officer ordered Jones to stop and remove his hands from his coat pockets. As such, the conduct of the officer in Jones was quite different than the conduct of Defendant Campbell in this case. Consistent with the requirements of 11 Del.C. § 1902, Defendant Campbell approached Plaintiff and requested identification from Plaintiff. Defendant Campbell's conduct was a minimal intrusion when weighed against the governmental interest in preventing crime and investigating citizen complaints. *Terry,* 392 U.S. at 22, 88 S.Ct. 1868 (recognizing that investigating *possible* criminal behavior is a legitimate government interest and weighing officer's conduct in light of this interest); *see also United States v. Abokhai,* 829 F.2d 666, 670 (8th Cir.1987) (describing officer's request for identification and explanation of individual's presence at location as actions which are "minimally intrusive").

Further, in *Jones,* the officer based his stop of Jones on an anonymous tip that an individual was behaving suspiciously and on such general criteria as the incident occurred at night and the area was a high crime area. Unlike *Jones,* in this case, Defendant Campbell was operating on a complaint from an identified individual, who was a veteran police officer of fourteen years and who was questioned by his superior and the investigating officer on the case, Sergeant Berry. Indeed, had Defendant Campbell ignored Mrs. Price's call and failed to investigate the area he would no doubt have been remiss in his duties as a police officer. Further, unlike the officer in *Jones* who was only aware of general crime in the area, Defendant Campbell was aware of a robbery occurring under similar circumstances involving an individual in the very same motel office. Coupling these circumstances with the time of night, the location of the suspect in the parking lot sitting in a van reading a newspaper on a cold evening, Plaintiff's reaction to the presence of Defendant Campbell, and Defendant Campbell's experience as a police officer, the Court cannot conclude that Defendant Campbell acted unreasonably in asking Plaintiff for identification. *See e.g. Dawdy,* 46 F.3d at 1429 (determining reasonableness of officer's decision to investigate includes such factors as time of day or night, location of suspect and suspect's reaction to officer's presence and concluding that totality of circumstances supported stop where vehicle was parked after 10 p.m. behind a pharmacy that was closed, trooper had remembered previous false burglary alarms at location and vehicle attempted to leave upon seeing officer); *United States v. Harris,* 404 F.Supp. 1116, 1126 (E.D.Pa. Dec.5, 1975) (holding that vehicle stop was justified where officer with twenty-seven years experience observed a large tractor trailer on a small rural road at one o'clock in the morning). Accordingly, the Court cannot conclude that the evidence was insufficient for a reasonable jury to conclude that Defendant Campbell's stop of Plaintiff was constitutional.

B. *Whether There Was Sufficient Evidence To Support The Jury's Verdict That Plaintiff's Constitutional Rights Were Not Violated By His Arrest*

Plaintiff next contends that his arrest was invalid and illegal. Specifically, Plaintiff contends that the Delaware statute under which Plaintiff was arrested, 11 Del.C. § 1301 is "limited to prohibiting 'fighting words,' that is, words which have a direct tendency to cause acts of violence by the person to whom the remark is addressed." (D.I. 115 at 15). Plaintiff contends that no reasonable jury could conclude in this day and age and under the circumstances of this case that the phrase "son-of-a-bitch" is inherently likely to provoke a violent reaction or a breach of the peace.

█ In the case of a misdemeanor offense, an arrest is valid under the Fourth and Fourteenth Amendments if the officer has probable cause to believe that the person has committed a misdemeanor in the officer's presence. *See United States v. Watson,* 423 U.S. 411, 422–424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Santine v. Roberts,* 661 F.Supp. 1165, 1166 (D.Del. 1987); *see also* 11 Del.C. § 1904 (authorizing arrest where officer has probable cause to believe misdemeanor was committed in his presence). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *U.S. v. McGlory,* 968 F.2d 309, 342 (3d Cir.1992) (citing *United States v. Cruz,* 910 F.2d 1072, 1076 (3d Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991)).

In this case, the misdemeanor at issue is a violation of 11 Del.C. § 1301(1)(b) which provides, in pertinent part:

A person is guilty of disorderly conduct when:

(1) The person intentionally causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by:

\* \* \* \* \* \*

b. Making an unreasonable noise or an offensively coarse utterance, gesture or display, or addressing abusive language to any person present ...

█ Thus, the inquiry for this Court is whether there was sufficient evidence for a reasonable jury to conclude that Defendant Campbell had probable cause to believe that Plaintiff committed a misdemeanor under Section 1301, such that Defendant Campbell's arrest of Plaintiff was valid. After reviewing the record in the light most favorable to Defendant Campbell as the verdict winner, the Court concludes that sufficient evidence supports the jury's verdict that Plaintiff's arrest did not violate his rights. At trial, Defendant Campbell testified that after Plaintiff refused to produce identification and continued to question Defendant Campbell about whether he had "anything better to do," Defendant Campbell attempted to call Sergeant Berry on the radio to assist him. (D.I. 126 at B–82:2–3; 83:6–9). Unable to contact Sergeant Berry, Defendant Campbell spoke with his dispatcher by radio. (D.I. 126 at B–80:1–3). During this time Plaintiff appeared to become more irritated, and when Defendant Campbell completed his radio contact with the dispatcher, Plaintiff called Defendant Campbell a "son-of-a-bitch." (D.I. 126 at B–80:7–9, 11–13). At the time Plaintiff uttered this phrase, Mr. Albitt, the assistant coach of William Penn's Basketball team, was no more than ten feet away. (D.I. 126 at B–98:24–99:1). Mr. Albitt's presence when

Plaintiff uttered this phrase was confirmed by Jammaar Manlove, who had been watching the incident unfold from the balcony of the motel. In the Court's view, a person lawfully being questioned by a police officer who directs a phrase like "son-of-a-bitch" to the police officer in the presence of others can reasonably be found to have created a risk of public annoyance or alarm. Thus, the Court concludes that a reasonable jury could conclude that Defendant Campbell had probable cause to believe that the misdemeanor of disorderly conduct occurred in his presence. Accordingly, the Court cannot conclude that the evidence was insufficient to support the jury's conclusion that Plaintiff's arrest was constitutional.

Plaintiff directs the Court to the decision of the Delaware Superior Court in *State v. White*, 1989 WL 25818 (Del.Super. Mar.7, 1989) (Babiarz, J.), and contends that the manner in which Defendant Campbell interpreted the disorderly conduct statute would render the statute unconstitutional. In the Court's view, Plaintiff's argument confuses the question of whether Defendant Campbell had probable cause to arrest Plaintiff with the question of whether Plaintiff was, in fact, guilty of disorderly conduct. It may be that Plaintiff could not have been convicted of disorderly conduct, but that does not affect the question of whether Defendant Campbell had probable cause to arrest Plaintiff. The inquiry in this case does not center on the constitutionality of the disorderly conduct statute, but rather, on whether there was probable cause for Plaintiff's arrest.

Even if the *White* decision was relevant, however, the Court cannot conclude that Plaintiff's arrest was illegal. In *White*, the superior court concluded that the disorderly conduct statute is limited to "fighting words" which are words which are likely to evoke a violent reaction from those who hear them, even though a violent reaction need not be proven. 1989 WL 25818 at *2. In this case, Plaintiff called a police officer a "son-of-a-bitch," in the presence of other citizens. Delaware courts have found a person's use of abusive language toward police officers in the presence of others to be sufficient to warrant an arrest, and in some circumstances even a conviction, for disorderly conduct. *See e.g. Friedar v. Amtrak*, 577 A.2d 752 (Del.1990) (upholding jury's verdict in civil action that plaintiff was not falsely arrested where plaintiff was acquitted on charge of disorderly conduct, but plaintiff was arrested by officer because he was cursing out loud saying "I don't have to pay the God damn fare" in the presence of twenty-five people waiting on a train); *Walls v. State of Delaware*, 552 A.2d 858 (Del.1988) (upholding conviction and finding that defendant's conduct of shouting obscenities at police officers in the middle of the night in a public courtyard of an apartment in the presence of the apartment's residence was within the conduct proscribed by 11 Del.C. § 1301(1)(b)). Accordingly, in these circumstances, the Court concludes that the jury had sufficient evidence to conclude that Defendant Campbell had probable cause to arrest Plaintiff.[1]

---

1. To the extent that Plaintiff challenges his detention and arrest on the grounds of racial discrimination, the Court likewise concludes that the jury's findings that Plaintiff's detention and arrest were not the result of racial discrimination is reasonably supported by the evidence. As Plaintiff recognizes, if the jury reasonably concluded that Defendant Campbell's actions in arresting and detaining Plaintiff were legal, they could not reasonably conclude that Defendant Campbell's actions were the product of racial discrimination against Plaintiff. (D.I. 115 at 16). Further, in the Court's view, there was insufficient evidence for a reasonable jury to find that Plaintiff's arrest and detention were racially motivated. For example, the testimony of Defendant Campbell established that his actions were in no way related to Plaintiff's race, and the jury

C. *Whether There Was Sufficient Evidence To Support The Jury's Conclusion That Defendant Township Of Dewey Beach Did Not Inadequately Train Its Police Officers*

By his Motion, Plaintiff contends that no reasonable jury could find that Defendant Dewey Beach fulfilled its obligation to adequately train its police officers. In support of his position, Plaintiff directs the Court to the testimony of Defendant Campbell and contends that Defendant Campbell was confused about the rights guaranteed citizens under the Fourth and Fourteenth Amendments and the laws of the State of Delaware.

As the Court previously stated, the Court is not permitted on a motion for judgment as a matter of law to re-weigh the evidence presented to the jury. Rather, the Court's inquiry is limited to whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief. After reviewing the record in the light most favorable to Defendant Dewey Beach, the Court concludes that the jury's conclusion is supported by the evidence.

 A municipality may be liable under 42 U.S.C. § 1983, if "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Inadequate police training may serve as the basis for Section 1983 liability only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("*Canton*"). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under Section 1983." *Id.* at 389, 109 S.Ct. 1197. Evidence that a high level policy-maker knew and acquiesced in certain conduct may be sufficient to establish a custom. *Olender v. Township of Bensalem,* 32 F.Supp.2d 775, 782 (E.D.Pa.1999) (citing *Fletcher v. O'Donnell,* 867 F.2d 791, 793 (3d Cir.1989)). However, an official policy or custom is not established by proof of an isolated incident by a lower level employee. *Id.* (citing *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Further, municipalities cannot be held liable on the basis of respondeat superior for the actions of a tortfeasor employed by the municipality. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

In this case, the Court has previously concluded that Plaintiff's arrest and detention did not violate his constitutional rights. Where, as here, the conduct complained of was lawful, the municipality cannot be held liable for a Section 1983 violation. *See e.g. Leddy v. Township of Lower Merion,* 114 F.Supp.2d 372, 377 (E.D.Pa. 2000) (recognizing that if police officer's actions did not reach the level of a constitutional tort, the township through its police department cannot be held liable for

was entitled to credit this testimony. (D.I. 126 at B–80, 89, 92–93). Moreover, in the Court's view, the only evidence Plaintiff offered that race was an issue was the fact that Plaintiff met the description of the suspicious person complaint which involved a black male. Given the circumstances of this case, the evidence establishing reasonable suspicion to detain Plaintiff, and the evidence es- tablishing probable cause to arrest Plaintiff, the Court concludes that the evidence reasonably supports the jury's findings that Plaintiff's arrest and detention were not the result of racial discrimination. Accordingly, Plaintiff's Motion For Judgment As A Matter Of Law will be denied to the extent that it challenges the jury's finding that Plaintiff was not the victim of racial discrimination.

inadequate training); *Hoffa v. Township of Colebrookdale,* 1999 WL 55171, *4 (E.D.Pa. Jan.15, 1999) (holding that if officer has probable cause to make an arrest such that no Fourth Amendment violation occurred, the township cannot be held liable for failure to train or supervise its officers).

■ Even if Defendant Campbell's conduct was considered unlawful, however, the Court would conclude that the jury's verdict in favor of Defendant Dewey Beach is supported by sufficient evidence. First, Plaintiff did not offer any evidence that high-level policy makers approved of or acquiesced in any conduct which violated the rights of individuals with whom the police come into contact. Further, Plaintiff did not offer any evidence that the municipality made a deliberate or conscious choice to disregard training or promulgated an official rule or policy statement disregarding training. In fact, Defendant presented evidence in the form of the Entrance–Level for Law Enforcement Officers Profile of Instruction ("Instruction Profile") which detailed the areas of training for police officers and the number of hours spent on each subject. (D.I. 126 at B–173–180). According to this Instruction Profile, Defendant Dewey Beach trains its officers in the areas of search, seizure and arrest, as well as in the areas of minority and race relations. Indeed, according to the Instruction Profile, police officers receive a total of seven hundred hours of training, of which one hundred six hours are spent addressing the law of arrest, search and seizure.

Plaintiff points to the testimony of Sergeant Berry, a training officer, to support its position that Defendant Dewey Beach did not adequately train its officers. According to Plaintiff, Sergeant Berry's testimony establishes that Defendant Dewey Beach had no procedures for conducting investigations and performing other police procedures. However, a reasonable jury could interpret Sergeant Berry's testimony in quite the opposite manner. Although Sergeant Berry testified that there was no procedure for conducting investigations written in the manual, he did testify that there was a procedure which officers typically followed. (D.I. 126 at B–153–154). He also explained that there were procedures to follow for performing other police functions as well, and Sergeant Berry explained these procedures to the jury. (D.I. 126 at B–150–160). Sergeant Berry further testified that some procedures were in fact set down in writing. For example, Sergeant Berry testified that there is a procedure "set down for vehicles that are stopped on the road." (D.I. 126 at B–157). Sergeant Berry also correctly explained the law as it applied to stopping an individual and asking for identification, and Sergeant Berry explained to the jury that Defendant Campbell was taught this law in his training. (D.I. 126 at B–159–160). Based on this testimony, as well as the documentary evidence regarding officer training, the Court concludes that there was sufficient evidence for a reasonable jury to conclude that Defendant Dewey Beach adequately trained its police officers.

## II. Plaintiff's Motion For A New Trial

Plaintiff's Motion For A New Trial is based upon two grounds. First, Plaintiff contends that a new trial is warranted, because the jury's verdict is against the great weight of the evidence.[2] Second,

---

**2.** In his Opening Brief, Plaintiff suggests that a new trial is warranted, because the jury's verdict is against the weight of the evidence. In his Reply Brief, however, Plaintiff appears to only seek the relief of a new trial in connection with his jury instruction arguments and his arguments regarding the sufficiency of the evidence appear to be limited to his request for judgment as a matter of law. (D.I. 128 at 9, 11, 16, 17). Nevertheless, for

Plaintiff contends that the Court's jury instructions are erroneous as a matter of law. The Court will address each of these arguments in turn.

### A. *Whether The Jury's Verdict Is Against The Great Weight Of The Evidence Such That A New Trial Is Warranted*

■ Where the ground for a new trial is that the jury's verdict is against the great weight of the evidence, the court should proceed cautiously because such a ruling would necessarily substitute the court's judgment for that of the jury. *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993). Although the standard for evaluating the evidence on a motion for a new trial is less rigorous than on a motion for judgment as a matter of law in that the evidence need not be viewed in the light most favorable to the non-moving party, the court's discretion is limited. A new trial is only appropriate where the verdict is against the great weight of the evidence if "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks our conscience." *Mondzelewski v. Pathmark Stores, Inc.*, 2000 WL 654137, *20 (D.Del. Mar.20, 2000) (citing *Williamson*, 926 F.2d at 1352–1353).

■ Given the evidence discussed by the Court in the context of Plaintiff's Motion For Judgment As A Matter Of Law including the evidence establishing reasonable suspicion for Plaintiff's detention and probable cause for his arrest, as well as the lack of evidence supporting Plaintiff's claims of racial discrimination and inadequate police training, the Court cannot conclude that the verdict shocks the conscience, cries out to be overturned or results in a miscarriage of justice. Ac-

cordingly, the Court will deny Plaintiff's Motion For A New Trial on the ground that the jury's verdict was against the great weight of the evidence.

### B. *Whether The Court's Jury Instructions Were Erroneous Such That A New Trial Should Be Granted*

■ In evaluating a motion for a new trial due to an alleged legal error in the jury instructions, the Court must determine "(1) whether an error was in fact committed, and (2) whether that error was so prejudicial that [the] denial of a new trial would be inconsistent with substantial justice." *Lafate*, 123 F.Supp.2d at 785. In making these determinations, the court should examine the jury instructions as a whole and should not scrutinize specific instructions in a vacuum. *Id.*

1. Whether Plaintiff was prejudiced by the Court's failure to instruct the jury regarding the federal statutory basis for his claims such that a new trial is warranted

Plaintiff contends that the Court improperly failed to instruct the jury regarding the basis for his claims. Specifically, Plaintiff alleges that the Court should have instructed the jury that there is a federal statute which allows individuals to bring an action to recover money damages for violations of constitutional rights. (D.I. 125 at 18).

After reviewing the jury instructions as a whole, the Court concludes that its instructions on the statutory basis for Plaintiff's claims were accurate and complete. The Court both identified Section 1983 as the relevant basis for Plaintiff's claims and defined the elements required to establish a violation of Section 1983. Although the

completeness, the Court will address whether the jury's verdict is against the great weight of

the evidence.

Court did not specifically state that Section 1983 provides for monetary damages, in the Court's view, this was obvious both as a result of Plaintiff's claim for damages and as a result of the instructions as a whole.

■ Further, in the Court's view, Plaintiff's proposed instruction does little to elucidate Plaintiff's claim. Moreover, even if the Court were to determine that its jury instructions on Section 1983 were erroneous, the Court cannot conclude that its alleged omission was so prejudicial as to mislead or confuse the jury such that a new trial would be warranted to prevent a substantial injustice. Accordingly, the Court will deny Plaintiff's request for a new trial on this ground.

 2. Whether Plaintiff was prejudiced by the Court's failure to instruct the jury regarding the standards for an investigatory stop such that a new trial is warranted

Plaintiff next contends that the Court's instruction regarding the standards for an investigatory stop was inadequate, because the jury was not instructed that a police officer must be able to articulate some

reasonable basis for his detention of an individual.[3] (D.I. 125 at 18). Plaintiff further contends that the Court's failure to give the requested instruction, combined with its instruction on the affirmative defense under 11 Del.C. § 1902 (Delaware Two Hour Detention Statute), misled the jury as to who had the burden of proof with respect to the affirmative defense. (D.I. 125 at 19).

■ After reviewing the jury instructions as a whole, the Court concludes that its instructions were not incorrect, and in any event, were not prejudicial to Plaintiff such that a new trial is warranted. Taken together, the Court's instruction for unlawful detention and arrest under 42 U.S.C. § 1983 and its instruction for questioning and detaining suspects under 11 Del.C. § 1902 represented an accurate statement of the relevant law.[4]

Plaintiff contends that the Court's omission of the *Terry* definition of reasonable suspicion renders the instruction erroneous as a matter of law and prejudicial. Although the Court did not recite the *Terry* language verbatim, the Court accurately recited the standard for detention under 11 Del.C. § 1902, which essentially codifies

---

**3.** In pertinent part, Plaintiff's proposed jury instruction stated:

A person may be subjected to a detention, otherwise known as an investigatory stop, by a police officer, if there are specific and articulable facts which, taken together with all rational inferences from those facts which would lead to a reasonable belief that a crime has been committed, is being committed, or is about to be, committed.
(D.I. 76 at 14).

However, the Court notes that the Proposed Jury Instruction attached to Plaintiff's Opening Brief (D.I.115, Ex. B) is not identical to the Proposed Jury Instruction previously submitted to the Court. (D.I. 76 at 14). Plaintiff's newly submitted Proposed Jury Instruction includes the following additional language:

In other words, a police officer such as Defendant Campbell may not detain a person

unless the officer reasonably believes, and can explain why he believes that the person has committed a crime, or is about to commit a crime.
(D.I.115, Ex. B).

**4.** At the prayer conference, the Court explained to the parties that if their proposed instruction was not included in the Court's charge to the jury, their proposed charge would be considered an exception to the charge. However, it is interesting to note, that Plaintiff's counsel raised only one issue at the prayer conference and that was the Court's charge regarding disorderly conduct. Plaintiff's counsel did not express any concerns about the Court's charge as it pertained to Section 1983 and the issues of arrest and detention. (Prayer Conf.Tr. 4/4/01 at 18).

the *Terry* standard. The Court stated that the officer must have "reasonable ground to suspect [the person] is committing has committed or is about to commit a crime" before the individual can be stopped and asked to produce identification. Elaborating on this standard, the Court added that "[a] person's subjective belief that another person is 'suspicious' without more fails to raise a *reasonable and articulable belief of criminal activity*." (emphasis added). Then, offering a further summary for its instruction, the Court stated:

> Therefore, if you find Defendant Campbell did not have a reasonable belief that Plaintiff has committed, was committing or was about to commit a crime, then Defendant Campbell was acting outside of his lawful authority when he demanded Plaintiff produce identification and detained Plaintiff.

In the Court's view, its instruction sufficiently established that Defendant Campbell needed to have a reasonable and articulable belief that Plaintiff was committing, had committed or was about to commit a crime for his stop to be constitutional. Given that the Court highlighted this aspect of the charge in three places, the Court cannot conclude that the Court's failure to instruct on the precise words of *Terry* was erroneous or prejudicial such that a new trial is warranted.

3. Whether Plaintiff was prejudiced by the Court's failure to instruct the jury regarding the constitutional limits on 11 Del.C. § 1301 such that a new trial is warranted

Plaintiff next contends that the Court committed clear error when it did not instruct the jury as to the limits that the United States Constitution places on the interpretation of disorderly conduct defined in 11 Del.C. § 1301.[5] (D.I. 115 at 20). The Court instructed the jury on disorderly conduct under Section 1301 as follows:

> Further, under the law of the State of Delaware, a police officer has the right to arrest a person without a warrant only when the officer reasonably believes that such person has committed a misdemeanor offense in the presence of the officer. In the present case, Defendants assert Plaintiff was arrested for the offense of disorderly conduct for using profanity in public. The offense of disorderly conduct is described under Delaware law as:

> > A person is guilty of disorderly conduct when: the person intentionally causes public inconvenience, annoyance, or alarm to any other person or creates a risk thereof by, among other things, making an unreasonable noise or an offensively coarse utterance, gesture, or display, or addressing abusive language to any person present.

(D.I. 107 at 15). The Court did not instruct the jury as to the First Amendment limitations on the applicable Delaware law.

After reviewing the jury instructions as a whole in the context of Plaintiff's claims, the Court cannot conclude that its instruction was erroneous or prejudicial such that a new trial is warranted. In his Complaint, Plaintiff did not allege that his First Amendment rights were violated by his arrest. Rather, Plaintiff maintained that he was arrested without probable cause as a result of racial discrimination. In this

---

**5.** Plaintiff's proposed jury instruction stated:

In order not to violate United States First Amendment Constitutional Guarantee of freedom of speech, a statute such as this must be applied only to punish what the law states is "unprotected speech." That is, words which, by their very utterance, tend to incite an immediate breach of peace.
(D.I. 76 at 14).

context, the Court believes that an instruction about the contours of the First Amendment was unnecessary.

Plaintiff again directs the Court to the decision of the Delaware Superior Court in *White*, 1989 WL 25818 at *2. As the Court discussed previously, however, the *White* case is distinguishable from the circumstances in this case. In *White*, the Court addressed the constitutionality of the disorderly conduct statute in the case of an individual's conviction for disorderly conduct. In this case, Defendant was not charged with or convicted of disorderly conduct. Rather, the sole question for the jury as it relates to disorderly conduct is whether Defendant Campbell had probable cause to believe that the offense of disorderly conduct occurred in his presence.

As the Court instructed the jury, the language of the statute itself requires the abusive language to be spoken in the presence of another individual and to cause or create a risk of public inconvenience, annoyance or alarm. Thus, it is evident from the words of the statute that the mere utterance of profanity is insufficient to constitute the offense of disorderly conduct. At the prayer conference, Defendant's counsel admitted that the disorderly conduct charge "is mostly as we gave," but expressed concern that the Court left off that part of the instruction that "any indication that just words alone generally aren't considered a crime because of First Amendment protections." (Prayer Conf. Tr. at 18). As the Court has explained, that words alone are insufficient to constitute disorderly conduct is evident from the language of the statute which requires "an offensively course utterance" or "abusive language" in the presence of others which causes or creates a risk of public inconvenience, annoyance, or alarm to any other person.

In sum, given that Plaintiff's claim was not based on a violation of his First Amendment rights, but on an alleged racially motivated arrest in violation of his right to due process and equal protection, the Court cannot conclude that its jury instruction was erroneous or that it prejudiced Plaintiff such that a new trial is warranted. Accordingly, the Court will deny Plaintiff's Motion For A New Trial insofar as it is based upon the Court's jury instructions in this case.

### III. Defendants' Motion For Attorney's Fees

By their Motion, Defendants request $52,362.50 in attorney's fees as the prevailing party in this litigation. Defendants base their fee calculation on a billing rate of $100 per hour.

The decision to award attorney's fees under 42 U.S.C. § 1988 is within the discretion of the district court. Although a prevailing party, a defendant is not entitled to attorney's fees unless the plaintiff's action was frivolous, unreasonable, or without foundation, or the plaintiff continued to litigate the action after it became evident that it was frivolous, unreasonable or without foundation. In making this determination, the Court of Appeals for the Third Circuit has set forth several "guideposts" for the court to consider, including:

(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the claims before trial or had a full blown trial on the merits.

*EEOC v. L.B. Foster Co.*, 123 F.3d 746, 750 (3d Cir.1997).

After reviewing the record in this case, the Court concludes that this action was not frivolous, unreasonable or without foundation, and therefore, Defendants are not entitled to attorney's fees even though they were the prevailing parties by virtue of the jury's verdict in this

case. A prima facie case under 42 U.S.C. § 1983 requires a plaintiff to demonstrate that: (1) a person deprived him of a constitutional right; and (2) the person who deprived him of that right acted under color of state law. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995). In this case, that Defendants acted under color of state law was not in dispute, so the question remaining was whether Plaintiff was deprived of a constitutional right by Defendant Campbell's alleged unlawful detention and arrest of Plaintiff, and Dewey Beach's alleged failure to train its police officers. Although Plaintiff did not ultimately prove to the jury's satisfaction that his constitutional rights were violated, the Court allowed Plaintiff's claims to go to the jury along with Defendant's affirmative defenses, because the Court believed the case was not clearly groundless or frivolous.

With regard to the second factor, the record contains evidence that although Defendants did not make a formal settlement offer other than their Offer Of Judgment pursuant to Federal Rule of Civil Procedure 68, they did pursue and participate in a mediation conference in which they explored resolving this litigation through settlement. That Defendants considered mediation and participated in it in good faith suggests that this action was not clearly frivolous and groundless.

With regard to the third factor, the Court conducted a full jury trial on the merits of this action, which is a strong indication that Plaintiff's claims were not frivolous. *Izquierdo,* 1999 WL 1427351, at

*4, 1999 U.S.Dist. LEXIS at *15. In addition, the Court observes that Defendants spent considerable time and money defending this case. *Id.* (recognizing time and money spent by defendants in defending an action as factor relevant to frivolous inquiry). Indeed, Defendants request attorney's fees in the sum of $30,000.[6] Thus, weighing these factors in total, the Court concludes that this action was not frivolous, groundless or unreasonable such that Defendants are entitled to an award of attorney's fees, and therefore, the Court, in its discretion, will deny Defendants' Motion For Attorney's Fees.

## CONCLUSION

For the reasons discussed, Plaintiff's Motion For Judgement As A Matter Of Law Or In The Alternative A New Trial will be denied, and Defendants' Motion For Attorney's Fees will be denied.

An appropriate Order will be entered.

---

6. Although Defendants contend that much of their time was spent responding to frivolous motions by Plaintiff, the Court observes that the docket indicates that Defendants did not file any motions for sanctions in this Court, an avenue of relief which would have been available to Defendants if they believed they were being barraged by frivolous motions. Further, Defendants contend that they needed

time to "blow away the smokescreens of Plaintiff's claim." However, the Court is not persuaded by Defendants' argument and believes, in light of the record and evidence adduced in this case, that Plaintiff's claims were not clearly groundless or frivolous.