Corporal William **BULLEN** and, Corporal Jeffrey Giles, Plaintiffs,

v.

Colonel L. Aaron **CHAFFINCH**, individually and in his official capacity as Superintendent of the Delaware State Police; James L. Ford, Jr., individually and in his official capacity as Secretary of the Department of Safety and Homeland Security of the State of Delaware, and Division of State Police Department of Public Safety and Homeland Security, State of Delaware, Defendants.

No. CIV.A.02–1315–JJF.

United States District Court, D. Delaware.

Sept. 17, 2004.

Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire of the Neuberger Firm, P.A., Wilmington, DE, for Plaintiffs.

Richard G. Placey, Esquire and Richard M. Donaldson, Esquire of Montgomery, McCracken, Walker & Rhoads, LLP, Wilmington, DE, Of Counsel: Edward T. Ellis, Esquire and Robert J. Fitzgerald, Esquire of Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for Defendants.

## OPINION

FARNAN, District Judge.

Pending before the Court is the Motion Of Defendants For Judgment As A Matter Of Law Or, In the Alternative, For A New Trial (D.I.121–1, 121–2) filed by Defendants Colonel L. Aaron Chaffinch, James L. Ford, Jr. and the Division of State Police, Department of Safety and Homeland Security of the State of Delaware. For the reasons set forth below, the Court will grant Defendants' Motion For Judgment As A Matter Of Law on Plaintiffs' claim that the Delaware State Police had reserved a certain fixed number, proportion or percentage of opportunities for promotion exclusively for certain minority groups and that such quota caused Plaintiffs not to be promoted in the latter part of 2001. The Court will also deny Defendants' Motion For A New Trial as it pertains to all other issues raised by Defendants.

## BACKGROUND

### I. Procedural Background

The procedural background of this action has been set forth by the Court in its decision regarding Plaintiffs' Motion For Full And/Or Partial Summary Judgment. Since the Court's ruling on that motion, a jury trial was held on Plaintiffs' claims. On special interrogatories, the jury found that each Plaintiff had proven by a preponderance of the evidence that (1) Defendants did not promote him to the rank of Sergeant between September 6, 2002 and December 31, 2001 because of his race; (2) the vacant sergeant positions to which Plaintiffs Bullen and Giles would have been promoted had they not been white were on the Governor's Task Force and the Counterterrorism Unit, respectively; (3) in the latter part of 2001, the Delaware State Police reserved a fixed number, por-

tion or percentage of opportunities for promotion exclusively for certain minority groups, and (4) such quotas caused Plaintiffs not to be promoted in the latter part of 2001. The jury also found that Defendants' actions were the proximate cause of damage to Plaintiffs, and the jury awarded Plaintiff Bullen $30,000 for future lost wages and Plaintiff Giles $20,000 for future lost wages. The jury also awarded each Plaintiff $150,000 as compensatory damages. The judgment was later amended pursuant to a stipulation between the parties to include $4,300 in past lost wages for Plaintiff Bullen and $3,500 in past lost wages for Plaintiff Giles. (D.I.127, B746, 749).

The parties agreed to a stipulated briefing schedule for post-trial motions, and that schedule was amended by subsequent agreement of the parties. The parties have fully briefed several post-trial motions, including the instant Motion For Judgment As A Matter Of Law, Or In The Alternative, For A New Trial.[1]

## II. Factual Background

The Court has set forth the factual background of this action in its previously issued decision on Plaintiffs' summary judgment motion. The Court will supplement this background when necessary during its discussion of the issues raised by Defendants' Motion.

## DISCUSSION

### I. Standard Of Review

#### A. *Renewed Motion For Judgment As A Matter Of Law Pursuant To Rule 50(b)*

Pursuant to Federal Rule of Civil Procedure 50, judgment as a matter of law may be granted when "there is no legally suffi-

cient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In assessing the sufficiency of the evidence, the court must review all of the evidence in the record and view the evidence in the light most favorable to the non-moving party, giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from the evidence presented. *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Sheridan v. E.I. Du-Pont de Nemours and Co.,* 100 F.3d 1061, 1072 (3d Cir.1996) (en banc). In addition, the court may not weigh the evidence, make credibility determinations or substitute its version of the facts for the jury's version. *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *McDaniels v. Flick,* 59 F.3d 446 (3d Cir.1995).

Motions for judgment as a matter of law are granted "sparingly" and only in those circumstances in which "the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Johnson v. Campbell,* 332 F.3d 199, 204 (3d Cir.2003). Although the plaintiff must produce more than a "mere scintilla of evidence" to sustain the jury's verdict, "the court should only overturn the verdict if it is 'so unreasonable' that the movant is entitled to judgment as a matter of law." *Lafate v. Chase Manhattan Bank,* 123 F.Supp.2d 773, 777 (D.Del.2000) (citations omitted). Stated another way, "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury properly could find a verdict for that party." 9A Charles R. Wright & Arthur R.

---

[1]. The Court will address Plaintiffs' remaining post-trial motions by separate Memorandum

Opinions and/or Orders.

Miller, *Federal Practice & Procedure* § 2524 at 249–266 (3d ed.1995)

### B. *Legal Standard For The Grant Of A New Trial*

■ In pertinent part, Federal Rule of Civil Procedure 59(a) provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). Perhaps the most common reason to grant a new trial is where the court determines that the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice. However, a new trial is also appropriately granted in circumstances in which the court finds that: (1) damages are excessive, (2) substantial trial errors were made, *see Woodson v. Scott Paper Co.,* 109 F.3d 913, 936 (3d Cir.1997); *Garrison v. Mollers N. Am., Inc.,* 820 F.Supp. 814, 820 (D.Del.1993); or (3) a party has improperly used peremptory challenges to exclude potential jurors on the basis of their race, *see Harrison v. Ryan,* 909 F.2d 84, 88 (3d Cir.1990).

■ The decision to grant or deny a new trial is committed to the sound discretion of the district court. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282 (1993) (reviewing district court's grant or denial of new trial motion under deferential "abuse of discretion" standard). However, where the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. *Klein v. Hollings,* 992 F.2d 1285, 1290 (3d Cir.1993).

■ In determining whether to grant a motion for a new trial, the court need not view the evidence in the light most favorable to the verdict winner. However, a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks our conscience." *Williamson,* 926 F.2d at 1352; *see also Price,* 40 F.Supp.2d at 550.

## II. Whether Defendants Are Entitled To Judgment As A Matter Of Law

■ By their Motion, Defendants contend that they are entitled to judgment as a matter of law because the jury's findings that Defendants maintained a racial quota for promotions at the DSP in the latter part of 2001 and this quota affected Plaintiffs' promotional opportunities are not supported by the evidence.[2] Specifically, Defendants challenge the sufficiency of three types of evidence offered by Plaintiffs: (1) evidence concerning the 1998 recruiting process; (2) the 1999 Dillman Memorandum; and (3) evidence regarding the government's desire to have the work force at the DSP reflect the diversity of the population of the State of Delaware. Defendants contend that the 1998 evidence of recruiting practices at the DSP is irrelevant to Plaintiffs' claims of discriminatory non-promotions in 2001, and therefore it is an insufficient basis upon which to support the jury's findings. Defendants also contend that the 1999 Dillman Memorandum also does not support Plaintiffs' quota as-

---

**2.** Defendants do not raise a Rule 50 challenge to the jury's verdict of discrimination under the pretext analysis.

sertion, because the Memorandum was merely a statistical accounting of the promotion ratio for minorities and women as compared to white males for the time period beginning in 1997 and ending in 1999, a period two years earlier than the events at issue in this case. Defendants maintain that this analysis was done to determine whether the promotion system was yielding a discriminatory result, and not to encourage discrimination in favor of or against any particular group. As for the evidence regarding the government's desire to have a diversified workforce at the DSP, Defendants contend that this evidence is an indefinite expression of an open-ended target and not a rigid certitude amounting to a quota.

The Supreme Court has explained that "[a] 'quota' is a program in which a certain fixed number or proportion of opportunities are 'reserved exclusively for certain minority groups.'" *Grutter v. Bollinger,* 539 U.S. 306, 123 S.Ct. 2325, 2342, 156 L.Ed.2d 304 (2003). Reviewing the record evidence in the light most favorable to Plaintiffs, the Court concludes that the jury's finding that the DSP maintained an illegal quota is not supported by the evidence. Although Plaintiffs presented evidence that race was a substantial and motivating factor governing promotion decisions and that attempts were made by Defendants to manipulate the promotional process so as to promote more black officers than white officers, the Court finds that this evidence does not demonstrate the existence of a quota in late 2001. The Court also finds that evidence regarding the DSP's use of a quota system for hiring and promotion decisions in the late 1990s fails to demonstrate that Defendants continued to use such a system in the later part of 2001.

Plaintiffs point to evidence demonstrating that political and administrative forces in the State of Delaware and in the DSP sought to be more aggressive in their efforts to create a workforce that reflects the diversity of the State's population. Plaintiffs contend that this evidence, coupled with the evidence demonstrating the DSP's prior use of a quota, demonstrates that Defendants continued to use a quota system. In the Court's view, however, the evidence does not bear out Plaintiffs' assertion. While evidence of the policies and statements of the Governor and DSP personnel demonstrates an aggressive effort toward equal opportunity initiatives, the Court is not persuaded that such evidence as a matter of law demonstrates the use of a quota system, as that term has been defined by the Supreme Court. No evidence was offered at trial that there was a fixed ratio or target number of black officers that the DSP sought to promote, but only that the DSP wanted to increase the number of minority officers promoted. In the Court's view, such a generalized effort to achieve more minority representation in the command ranks of the DSP does not prove with the requisite certainty that a quota was established. In fact, under certain circumstances such an effort may be admirable. Accordingly, the Court concludes that the jury's findings that Defendants maintained an illegal quota system and that a quota system adversely affected Plaintiffs' promotional opportunities must be set aside as unsupported by the record evidence, and therefore, the Court will grant Defendants' Motion For Judgment As A Matter Of Law on the jury's quota findings.

## III. Whether Defendants Are Entitled To A New Trial On The Remaining Portions Of The Jury's Verdict

With respect to the remaining portions of the jury's verdict on Plaintiffs' discrimination claims under the pretext analysis, Defendants contend a new trial is warrant-

ed. Specifically, Defendants raise five grounds in support of their motion for a new trial: (1) Plaintiffs used their peremptory challenges in a discriminatory manner; (2) the Court's jury instructions were erroneous; (3) the Special Verdict Form was confusing and misleading to the jury; (4) the Court erred with respect to certain evidentiary rulings; and (5) the jury's damage award is against the great weight of the evidence.

A. *Whether Plaintiffs Exercised Peremptory Challenges On The Basis Of The Race Of Potential Jurors*

Defendants contend that they are entitled to a new trial, because Plaintiffs improperly removed five potential jurors because they were minorities. Defendants contend that Plaintiffs used 80% of their peremptory strikes, four out of five, to remove minority women, and that the reasons offered by Plaintiffs' counsel for removing these potential jurors was a pretext for race discrimination. Although Defendants initially refer to five potential jurors, it is evident from their argument, that they challenge only two of Plaintiffs' strikes, those against Juror 8 and Juror 22.

 It is well-established that the Equal Protection Clause prohibits discrimination on the basis of race in the selection of a petit jury. *Batson v. Kentucky,* 476 U.S. 79, 88, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Riley v. Taylor,* 277 F.3d 261, 275 (3d Cir.2001) (en banc). When a peremptory strike exercised by a party is challenged, the court must undertake a three step analysis. First, the moving party must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, once that showing is made, the non-moving party must offer a race-neutral explanation for striking the juror in question. Third, the court must determine whether the moving

party has shown purposeful discrimination. *Miller–El v. Cockrell,* 537 U.S. 322, 328–329, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

 Applying this analysis, the Court first observes that Defendants' need to make a prima facie showing has been mooted, because Plaintiffs offered an explanation for their peremptory challenges before the Court addressed the adequacy of any prima facie showing. *DeJesus,* 347 F.3d at 505. Thus, the Court will proceed to the second step to determine if Plaintiffs' explanation for each peremptory strike was facially race-neutral. This step does not require that the explanation be persuasive or even plausible. Rather, the reason offered will be deemed race neutral unless a discriminatory intent is inherent in the non-movant's explanation. *Id.* Further, an "explanation which is otherwise racially neutral on its face is not infirm solely because its repeated application would have a disparate impact on a particular racial group." *United States v. Uwaezhoke,* 995 F.2d 388, 392 (3d Cir.1993).

 With respect to Juror 8, Plaintiffs contend that this juror was stricken because she lives less than 10 miles from Defendant Chaffinch, just on the other side of the Kent/Sussex line. Plaintiffs contend that they "did not want jurors who live near [Defendant] Chaffinch in rural western Sussex County." (B96–97). With respect to Juror 22, Plaintiffs contend that this juror was stricken because she lives in the City of Wilmington, a historically Democratic stronghold, and thus, is a likely Democratic voter. Because Plaintiffs' case criticized the actions and policies of a popular Democratic Governor and four other statewide elected Democratic representatives of the City of Wilmington, Plaintiffs maintain that they sought to strike residents of the City of Wilmington. The Court finds that Plaintiffs' explanations

are facially neutral, and therefore, the Court must proceed to the third step of the *Batson* inquiry.

■ At the third step of the *Batson* inquiry, the burden of proof is on Defendants to prove intentional race discrimination. As the Supreme Court has explained:

In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of [counsel's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'

*Hernandez v. New York*, 500 U.S. 352, 358–359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), *quoted in DeJesus*, 347 F.3d at 507.

Defendants contend that Plaintiffs' proffered explanations are a pretext for racial discrimination. Defendants contend that the Court must compare stricken black jurors to sitting white jurors to determine whether the asserted justifications for striking the black jurors are pretextual. Plaintiffs agree that such a comparison is necessary and contend that once such a comparison is made it is evident that Plaintiffs' peremptory strikes were not exercised on the basis of race. The Court agrees with Plaintiffs. In seeking to strike all jurors who lived in the City of Wilmington, Plaintiffs did not only strike a black juror, Juror 22, but also struck a white juror, Juror 20. Defendants claim that Jurors 3 and 9, who were also white, were not bumped. However, as evidenced by their zip codes, Jurors 3 and 9 were not residents of the City of Wilmington, but lived outside the city limits in areas north and east of the City of Wilmington. (D.I.

137, Tab A, B). Further, the only juror that actually lived within the city limits who was permitted to remain on the jury was a black juror, Juror 5, whose brother was a New Castle County police officer. (B73–74). Based on these comparisons, the Court finds that Plaintiffs' counsel did not exercise a peremptory challenge with respect to Juror 22 on the basis of race.

With respect to Juror 8, Defendants argue that this juror was purportedly challenged because she lived in the same county as Defendant Chaffinch, yet Plaintiffs did not challenge Juror 2, a white juror who also lived in Sussex County. After considering the residence of these two jurors, the Court finds that the county where each of these jurors resides is less important than the physical proximity of the juror's residence to Defendant Chaffinch's residence. For example, Juror 8 lives in Harrington, a town which is less than 10 miles from Defendant Chaffinch's home. By contrast, Juror 2 lives in Millsboro which is on the southeastern side of Sussex County, more than 30 miles from Defendant Chaffinch's home. (D.I. 137, Tab D, E). In the Court's view, the geographical proximity between these two juror and Defendant Chaffinch is quite different, and the Court finds this difference to be consistent with the explanation provided by Plaintiffs' counsel for the exercise of a peremptory challenge against Juror 8.

In sum, the Court is not persuaded that Plaintiffs' counsel exercised peremptory challenges in a discriminatory manner. A comparison of the jurors remaining on the jury to those who were stricken, as well as the Court's observations regarding the demeanor of Plaintiffs' counsel, lead the Court to conclude that Plaintiffs' counsel acted consistently with his explanations and that his explanations were not a pretext for racial discrimination. Because the Court finds no basis to support Defen-

dants' claim of race discrimination in the selection of jurors, the Court declines to order a hearing on this issue. Accordingly, the Court concludes that Defendants are not entitled to a new trial on *Batson* grounds.

B. *Whether A New Trial Is Warranted Based On Defendants' Claim That The Jury Instructions Were Erroneous*

Defendants next contend that a new trial is warranted, because the Court gave a causation instruction that was confusing and contained incorrect statements of law concerning the Plaintiffs' burden. Defendants contend that the Court should have given the following instruction requested by Defendants:

> In order for Plaintiffs Bullen and Giles to establish their claims they must prove by a preponderance of the evidence that Defendants Chaffinch, Ford and the DSP intentionally discriminated against them.

(D.I. 135 at 37). By denying to give this instruction, Defendants contend the Court failed to instruct the jury as to its ultimate function of determining whether Defendants had intentionally discriminated against Plaintiffs.

Defendants also contend that the Court should have sustained its objection to the Court's instruction related to Plaintiffs' prima facie case. Specifically, the Court instructed the jury on Plaintiffs' prima facie case as follows:

> In order for plaintiffs to prevail on their claim against defendants for race discrimination based on indirect evidence, they must prove the following elements by a preponderance of the evidence:
>
> 1) both plaintiffs are white;
> 2) they were qualified to be Sergeants;
> 3) there were vacancies for the position of Sergeant;

> 4) all the persons remaining on Band B to fill the vacancies under the then current list were all white;
> 5) the list was frozen and allowed to expire without making any promotions because of race;
> 6) a new list was created; and
> 7) black candidates were treated more favorable on the new list.

(Tr. Vol. E at 12–13). Defendants contend that this formulation of the prima facie case was erroneous because it contained two unnecessary elements. Specifically, Defendants contend that Element 4 should have directed the jury to consider the candidates on Band C, as well as Band B, because the number of candidates on Band B was small and Plaintiffs attempted to prove at least four Sergeant openings. Defendants also contend that Element 7 is ambiguous, because it asked the jury whether "black candidates were treated more favorably on the new list." Defendants further contend that Element 4 becomes more problematic in combination with Element 7, because Band B contained only white Sergeant candidates, so anything happening in the next promotion cycle would be more favorable than the zero number of promotable blacks in Band B from the 2000–2001 list.

In evaluating a motion for a new trial due to an alleged legal error in the jury instructions, the Court must determine "whether an error was in fact committed, and (2) whether that error was so prejudicial that [the] denial of a new trial would be inconsistent with substantial justice." *Lafate*, 123 F.Supp.2d at 785 (citations omitted). In making these determinations, the court should examine the jury instructions as a whole and should not scrutinize specific instructions in a vacuum. *Id.* The trial court has broad discretion concerning the particular language used in a jury instruction, and need not give a

proposed instruction if the essential points are already covered by the instructions given. *Grazier v. City of Phila.*, 328 F.3d 120, 126 (3d Cir.2003). However, the jury instructions must fairly and adequately submit the issues in the case to the jury. *Tigg Corp. v. Dow Corning, Corp.*, 962 F.2d 1119, 1124 (3d Cir.1992). The Court abuses its discretion with respect to jury instructions "if the instruction was capable of confusing and thereby misleading the jury." *Grazier*, 328 F.3d at 126.

With respect to Defendants' argument that the Court's jury instructions failed to instruct the jury on its ultimate decision to determine whether Plaintiffs were intentionally discriminated against on the basis of race, the Court concludes that the jury charge taken as a whole properly instructed the jury. Although the Court declined to give the instruction proposed by Defendants, the Court instructed the jury no less than four times throughout the charge that it had to find that Plaintiffs were not promoted because of their race. (B880, B881, B882, B884). Defendants are not entitled to any particular form of instruction, and the Court is persuaded that the charge taken as a whole fairly and adequately instructed the jury as to the applicable legal requirements. *See Shaw v. Lauritzen*, 428 F.2d 247, 251 (3d Cir.1970).

■■■■ With respect to the Court's instructions regarding the elements of a prima facie case, the Court likewise concludes that its instructions were not erroneous. The Court is permitted to instruct the jury as to the elements of the prima facie case where, as here, certain elements are in dispute and require fact finding by the jury. *See Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 347 n. 1 (3d Cir.1999). In this case, Defendants outlined virtually the same elements that the Court provided to the jury as part of the Plaintiffs' burden of proof, and Defendants disputed all of the elements except that Plaintiffs were

white. (B1108, D.I.87, 85). Thus, it was appropriate for the Court to apprise the jury of the elements of the prima facie case. Further, it is not *per se* inappropriate for the jury to know the elements of the prima facie case, provided that the jury is not given the confusing burden and legalistic jargon of the *McDonnell Douglas* burden shifting framework. *Pivirotto*, 191 F.3d at 348 n. 1. Indeed, it is the elements of the prima facie case taken together with the factfinder's belief or disbelief of the defendants' proffered reasons for its adverse employment actions which enable the jury to decide the ultimate question of whether the defendants unlawfully discriminated against the plaintiffs. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066–1071; *see also Reeves*, 530 U.S. at 143–148, 120 S.Ct. 2097; *Smith* 147 F.3d at 280 (stating that "the jurors must be instructed that they are entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met *if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision* ") (emphasis added).

In this case, the Court did not provide the jury with any legalistic jargon or nuances and set forth a recitation of what Defendants themselves believed needed to be proven by Plaintiffs. As for Defendants' contention that the jury instruction was erroneous because it failed to direct the jury to consider Band C of the 1999 promotion list, the Court concludes that in the context of the instant case, the instruction at issue was proper. The Court understands that a stand alone consideration of the instruction could result in a conclusion that the instruction is deficient. However, even if Defendants are correct, the Court believes any error was harmless. If the jury had been instructed to consider Band C, one additional black officer would

have been eligible for promotion, and thus, if all bands created under the alternate list (Bands A, B, and C) were considered, a total of 5 black officers would have been eligible for promotion. (PX 1, 5, B901–904, B913–915; D.I. 137 at Tab F). Thus, whether Band B was considered or not considered by the jury, black officers would have fared better under the alternate list. Accordingly, the Court concludes that if the instruction is erroneous because of the exclusion of Band C, the error was harmless in that it would not, in the Court's view, have affected the jury's analysis of the issue for which the instruction was given.

### C. Whether A New Trial Is Warranted Based On Defendants' Claim That The Special Verdict Form Was Erroneous

Defendants next contend that a new trial is warranted, because the Special Verdict Form erroneously includes dates during which Defendant Chaffinch was not responsible for the promotion process. Specifically, the Special Verdict Form asked the jury to determine whether Defendants decided not to promote Plaintiffs "between September 6, 2001, and December 31, 2001." Defendants contend that this interrogatory is misleading because Defendant Chaffinch was not responsible for any promotion decisions prior to assuming the role of Acting Superintendent on October 1, 2001. Defendants also contend that the jury could have agreed with Defendants that the promotion freeze was lifted at the end of September 2001 and

that is why Plaintiffs were not promoted in September 2001.

Plaintiffs contend that it was appropriate to include the period from September 6 though December 31, 2001, because the evidence supported Plaintiffs' argument that a promotions freeze went into effect on September 6, 2001. Plaintiffs contend that, based on the testimony of Defendant Ford, the jury could have concluded that Defendant Chaffinch approved, ratified, sanctioned and otherwise abided by the promotions freeze. Plaintiffs further point out that Defendant Ford was in office on September 6th and was the person who ordered the promotions freeze. Thus, Defendant Ford is properly accountable for the freeze.

Reviewing the parties' arguments in light of the evidence adduced at trial and the interrogatories posed in the Special Verdict Form, the Court concludes that it was not error to include the September 6, 2001 date in the interrogatories. Plaintiffs presented evidence of an indefinite promotion freeze and evidence that Defendant Chaffinch abided by this freeze. Further, the evidence supported Defendant Ford's liability for the promotion freeze. The parties discussed this issue with the Court during the prayer conference, and Defendants acknowledged that there was a promotion freeze in September 2001. (Tr. Vol. D at 26). Accordingly, the Court concludes that the jury was properly asked to consider the time frame beginning with the September 6, 2001 date, as the relevant date from which the discrimination against Plaintiffs began.[3]

---

**3.** In its decision on a motion for partial summary judgment filed in this case, the Court stated the relevant time frame for Plaintiffs' claims was October 1, 2001 through December 31, 2001. In setting this time frame, the Court was considering only the date that Defendant Chaffinch assumed his role as Acting Superintendent and not the date on which the promotions freeze commenced. This issue

was more thoroughly discussed at the prayer conference, and it was evident to the Court that the parties agreed that the import of the instruction was that Colonel Chaffinch was acting pursuant to a freeze initiated on September 6, even though Colonel Chaffinch didn't assume his role as Acting Supervisor until October 1. (Tr. Vol. D at 24–25). The Court gave the parties the opportunity to alter

D. *Whether A New Trial Is Warranted Based On Certain Evidentiary Rulings*

Defendants next contend that the Court erred with respect to two evidentiary rulings: (1) the Court's decision to admit the Dillman e-mail describing the 1998 recruiting process, and (2) the Court's decision declining to admit the Blunt–Bradley Report. Defendants contend that the 1998 Dillman e-mail is irrelevant and unfairly prejudicial under Federal Rule of Evidence 403. As for the Blunt–Bradley Report, Defendants contend that the report in its entirety was relevant to the issues in the case and should have been admitted in full.

■■■ A new trial is warranted based on a court's decision to admit or exclude evidence, if that ruling affects a substantial right of a party. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 180 (3d Cir.2000). With respect to the admissibility of evidence under Rule 403, "a trial judge is given broad discretion in weighing the probative value of evidence against its potential prejudicial effect." *U.S. v. Guerrero*, 803 F.2d 783, 785 (3d Cir.1986). Rule 403 should be exercised "sparingly" to exclude evidence, because such evidence is "concededly probative." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir.1992). Thus, the balance under Rule 403 should generally be struck in favor of admissibility. *Id.*

■ ■■ With respect to the 1998 Dillman e-mail concerning the recruiting process, the Court concludes that this evidence was properly admitted. In the Court's view, the 1998 e-mail is relevant evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less proba-

ble than it would be without the evidence." Fed.R.Evid. R. 401. Plaintiffs argued that the Governor's administration sought to be more aggressive than previous administrations with respect to minority hiring and promotions. Thus, as Plaintiffs' contended at trial, the 1988 e-mail could be viewed as the benchmark from which Defendants' began efforts to secure a work force more reflective of the population of the State of Delaware. Given the position Mr. Dillman held as a civilian employee of the DSP, the Court is persuaded that allowing the jury to know and consider his views in the context of the factual issues the jury was asked to decide was not error. Mr. Dillman's discussion of the recruiting process is evidence probative of the intent of Defendants regarding the employment practices of the DSP. In reaching the decision to admit Mr. Dillman's e-mail, the Court considered the typically difficult task a plaintiff encounters concerning evidence of a defendant's intent in discrimination cases, and the ability of Defendants in this case to address or rebut the contents of the e-mail.

Because the Court found the e-mail evidence relevant to the intent issues in this case, as indicated above, the Court considered whether the e-mail was unduly prejudicial. Plaintiffs' evidence of intent in this case was built on the employment decisions made by Defendants prior to Defendant Chaffinch assuming the duties of Superintendent and then connecting that history to the promotional process that involved Plaintiffs here. In this context, the Court found that the 1998 Dillman e-mail was not unduly prejudicial to Defendants, and therefore, the Court concludes that the e-mail was properly admitted into evidence.

---

the instruction if they believed it could be worded more clearly, but the parties declined

to offer other proposals.

To the extent that the Blunt–Bradley report was admitted to support Plaintiffs' pretext case such that the admissibility of the report is not mooted by the Court's decision to grant judgment as a matter of law in favor of Defendants on the quota issue, the Court concludes that the proper balance was struck to avoid undue prejudice. In declining to admit the entire report, but allowing the parties to use relevant portions of the report through testimony of witnesses, the Court concludes Defendants were not prejudiced. The jury did not need to have the full document, and by allowing relevant testimony, the issue of the jury considering irrelevant evidence was avoided. In sum, the Court's ruling allowed the jury to consider all relevant portions of the report.

E. *Whether The Jury's Damage Award Is Against The Weight Of The Evidence Such That A New Trial Is Warranted*

Defendants next contend that a new trial is warranted, because the jury's damages award is excessive and against the weight of the evidence. Defendants contend that Plaintiffs failed to present direct and substantial evidence of actual injury. Defendants point out that Plaintiffs did not present any evidence of professional medical or psychiatric counseling, and Defendants did not present testimony from their peers that Plaintiffs were held in any less esteem. Defendants contend that Plaintiffs only presented their testimony in support of the claims that they suffered physical and emotional distress, and that this testimony is not sufficient to justify the jury's damages award of $150,000 to each Plaintiff.

■ In evaluating the damages award, "[t]he dispositive legal question is whether, given the evidence presented, the jury's award was so irrational as to shock the judicial conscience." *Tormenia v. First Investors Realty Co., Inc.,* 251 F.3d 128, 138 (3d Cir.2000). The Court is obligated to uphold the award of damages if a reasonable basis exists in the record to support the award. *Evans v. Port Auth. of N.Y. and N.J.,* 273 F.3d 346, 351–352 (3d Cir.2001).

■ Similarly, a remittitur is appropriate when the "trial judge concludes that a jury verdict is 'clearly unsupported' by the evidence and exceeds that amount needed to make plaintiff whole, i.e., to remedy the effect of the employer's discrimination." *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1100 (3d Cir.1995). If remittitur is awarded it should "be set at the 'maximum recovery' that does not shock the judicial conscience." *Evans,* 273 F.3d at 351–352.

■ The Court finds that a sufficient evidentiary basis exists to support the damages award of the jury in this case and that it is not excessive so as to shock the judicial conscience. As the Third Circuit has recognized, "racial discrimination is vicious, destructive, and debilitating." *Evans,* 273 F.3d at 354. The testimony of both Plaintiffs Giles and Bullen demonstrated that Plaintiffs suffered personally and professionally as a result of Defendants' discrimination. Plaintiffs testified that they were committed to their careers as police officers early in life and were well regarded by their peers. Plaintiffs testified that the DSP is a small community, and the atmosphere had a "soap opera" quality where everyone talked about everything that was going on. Plaintiffs testified that they were humiliated by Defendants' failure to promote them. Both Plaintiffs testified that their peers knew there were promotion vacancies and questioned them as to why they were "blacklisted" and who they had "upset."

Both Plaintiffs further testified that their family lives also suffered. Plaintiff Giles testified that he couldn't sleep at night and suffered from mood swings. Plaintiff Giles testified that he took his anger out on his children and wife. Plaintiff Bullen testified that he became withdrawn and short-tempered and that he lost his happy go lucky attitude and sense of humor. Plaintiff Bullen further testified that he lost 15–20 pounds as a result of stress he endured from his failure to be promoted.

Defendants contend that this testimony is insufficient to support the damages awarded, because Plaintiffs testimony was not corroborated by medical or other expert evidence, or by the testimony of Plaintiffs' family members. However, such corroboration and expert testimony is not required. *See Evans*, 273 F.3d at 352 n. 5; *Bolden v. SEPTA*, 21 F.3d 29, 34 (3d Cir.1994). The Court observed the demeanor, expressions and attitude of Plaintiffs as each testified and concluded Plaintiffs' testimony was highly credible. Both Plaintiffs testified that it was difficult for them to talk about their feelings. Plaintiff Bullen testified that he was a tough man who came from the "John Wayne generation" and that expressing emotion is "a sign of weakness." In the Court's view, Plaintiff Bullen had genuine difficulty testifying about the impact Defendants' actions had on him and his family. With regard to Plaintiff Giles, the Court observed that he hung his head while testifying about how his relationships with his children and wife were affected by his experiences with the promotion process at the DSP. In sum, the Court finds that the exhibitions of emotion by Plaintiffs were genuine. The Court is likewise convinced that Plaintiffs suffered injury to their reputation within the ranks of the DSP, humiliation and emotional distress, all of which are consistent with the jury's award of damages. Accordingly, the Court concludes that reasonable and substantial evidence supports the jury's damages award, and therefore, the Court will deny Defendants' request for a new trial on this ground.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion For Judgment As A Matter Of Law on Plaintiffs' claim that the Delaware State Police had reserved a certain fixed number, proportion or percentage of opportunities for promotion exclusively for certain minority groups and that such quota caused Plaintiffs not to be promoted in the latter part of 2001. The Court will deny Defendants' Motion For A New Trial as it pertains to all other issues raised by Defendants.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this 17th day of September 2004, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants' Motion For Judgment As A Matter Of Law (D.I.121–1) on Plaintiffs' claim that the Delaware State Police had reserved a certain fixed number, proportion or percentage of opportunities for promotion exclusively for certain minority groups and that such quota caused Plaintiffs not to be promoted in the latter part of 2001 is *GRANTED*.

2. Defendants' Motion For A New Trial (D.I.121–2) on all other grounds raised by Defendants is *DENIED*.